## Case No. 1,969.

### The BROTHERS.

[2 Biss. 104;[1] 1 Chi. Leg. News, 1.]

District Court, N. D. Illinois. Feb., 1869.[2]

COLLISION—RULE OF CHICAGO RIVER — CROSSING AND SIGNALS—RATE OF SPEED—TUG AND TOW.

1. It is the established rule of the Chicago river that a steamer must take the starboard side of the channel.

2. If she wishes to go to port, she must give the proper signal to an approaching vessel, by the whistle; and the fact that a portion of the river is occupied by other vessels, does not make it less her duty to keep the proper side, or give the usual signal before crossing.

3. A vessel in the river must run slowly and circumspectly, and though an approaching vessel is on the side of the channel to which she has no right, is nevertheless bound to reduce her speed to avoid a collision.

4. It is the duty of a vessel in tow of a tug to watch her own course, and also the tug; and if all her hands are making sail, and she cannot be properly managed, she is at fault.

5. Under such circumstances, the view of the helmsman being obstructed, a lookout should be kept.

6. In this case, the tug, the tow and the propeller having each been in fault, the loss was divided among the three.

In admiralty. This was a libel by John C. Maxwell & Co., owners of the schooner Supply, against the tug Brothers and the propeller Lady Franklin, for damages by a collision in the Chicago river; the Lady Franklin having run into the Supply while the latter was in tow of the tug Brothers. [Decree for libellants.]

Miller, Van Arman & Lewis, for libellants.

Rae & Mitchell, for the Lady Franklin.

H. F. Waite, for the Brothers.

DRUMMOND, District Judge. The facts in this case are substantially as follows: Very early on the morning of the 4th of October, 1866, the steam tug Brothers took the scow schooner Supply in tow, just above Wells street bridge, in the Chicago river. The tug proceeded down the river and through the south opening of Rush street bridge, in order to tow the Supply into the lake. About this time the propeller Lady Franklin was seen approaching the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court in Maxwell v. The Brothers and The Lady Franklin, Case No. 9,322.]

harbor. The tug with her tow went down on the south side of the channel, when seeing two vessels and a tug lying on the south side of the river at a wharf opposite one of the elevators, the Brothers took an angling course across to the north side. At this time the hands of the schooner were all engaged in making sail, the wind being northeast. The captain was at the helm. The propeller, meanwhile, was making her way into the river, and when opposite "the knuckle" of the north pier, not far from the "tub factory," a collision occurred between the propeller and the schooner, the latter being struck on her starboard bow. The schooner sunk almost immediately, but was subsequently raised and repaired at a heavy expense. The place where the collision happened seems to have been a short distance east of the east end of the south pier, and not far from the north pier. The morning was fine, but the atmosphere was hazy, and, though early, there was light enough to enable each craft to ascertain the position of the others.

It is insisted on the part of the tug that directions were given to the schooner to follow directly in the wake of the tug, in crossing over to the north side, which was not done, and that the schooner suddenly luffed up to the north side of the channel, and hence the collision.

It is urged by the schooner that she did follow in the wake of the tug as a matter of duty and principle; that if any directions of a special character were given by the tug they were not heard, and that the latter had no right to cross over to the north side in the manner stated. It is claimed by the propeller that she was coming into the river on the north side—her own proper side;—that the tug without any warning or asking any permission, suddenly crossed over, right in the path of the propeller, when the latter, though not going more than two or three miles an hour, could not be stopped in time to prevent a collision.

I think the conclusion, fairly deducible from the evidence, is: that the propeller ran into the schooner before the latter had fully got across the river, and while the tug was in the act of taking her course down on the north side of the channel.

The witnesses on the propeller generally declare that she was running under a proper check, and quite slowly; but I think it manifest, from what happened afterwards, that the Lady Franklin was not under sufficient control, and that she was running too fast. She had just entered the harbor; it was easy to see that vessels were coming down which she would be likely to meet at once. Now, under such circumstances, it was the rule alike of law and common sense that the propeller should proceed slowly, and with great circumspection. The moment the propeller entered the river her speed should have been reduced to a moderate rate, so

that, having proper steerage way, she yet should be under reasonable control. If this rule had been observed in this case, it is apparent the propeller could have been prevented from coming in contact with the schooner, or at least the blow would not have been followed with such serious consequences. It is a mistake to suppose that because the propeller had the right to the north side of the channel in coming in, she was not obliged to reduce her speed at once in view of approaching vessels descending the river, even if it were the duty of the latter to take the opposite side of the channel. The Chicago river is a narrow, winding water course, in the season of navigation much frequented by various craft, and, therefore, great caution is necessary in passing up and down.

Notwithstanding, therefore, what is stated by several witnesses on board of the propeller, I prefer taking the testimony of some of the other witnesses, considering it confirmed by independent facts, and think the Lady Franklin had too much headway on her at the time. If she were running under a check, as claimed by her officers, it was not applied soon enough, or was not strong enough. The propeller, consequently, was in fault.

It is a rule of the Chicago river, understood among seamen, and repeatedly sanctioned by this court, that a steamer must take the starboard side of the channel in ascending or descending. This brings two craft meeting, on opposite sides. If a steamer wishes to go on the port side, the proper signal is given by the whistle to indicate it, and if an approaching steamer on the other side assent, the former can go to port. It is clear that some such rule must be made and observed, in order to prevent, as far as possible, accidents in such navigation, and it is indispensably necessary that it should be distinctly understood that, when a steamer violates this law it is at its own peril.

In this case no precaution of the kind was taken by the tug, and the circumstance that two vessels and a tug were lying at a wharf on the south side, and thus some portion of the river was occupied, did not authorize the tug Brothers to omit the usual signal, and did not the less make it the duty of the tug to keep the south side. As a matter of practice and observation, we know that as between two openings of a bridge on the river, a steamer sometimes takes in descending, for example, the north opening of the State street bridge and of Rush street bridge, and in ascending, the south opening; but it is settled, and it has been often held in this court, that whenever this is done it is at the peril of such steamer. The tug, therefore, was also in fault. The schooner was in tow of the tug, and to a certain extent under its control as to course, and absolutely as to speed, and though it may often be unnecessary to have a lookout on a vessel when in tow,

yet I think, under the circumstances in which the Supply was then placed, there ought to have been a lookout forward to direct the course of the schooner. All the crew were in the act of making sail—their attention was consequently somewhat withdrawn from the immediate course of the vessel. The sails that were being hoisted, it is admitted, obstructed the view of the helmsman. It is positively stated by the witnesses on the tug that the schooner did not follow in the course of the tug, and notwithstanding this is denied by those on the schooner, I think it is most probably true. The practice is uniform, I believe, for vessels in tow of a tug in the Chicago river, to watch their own course, and not rely absolutely on the tug. A great deal may depend on the extent and fastening of the tow line, but with the ordinary tow line used, the course of the vessel should be attended to with almost as much care as if on her own motion. It seems to me therefore, that it was a fault for the schooner to let all her men be employed in making sail at such a critical juncture. The helmsman was not of himself able to take that comprehensive glance at the condition of the river and lake necessary for the proper management of the Supply. Owing to this, I think, there was not that instant change of course to the north side, in following the tug, that there might have been. It cannot with confidence be asserted that this fault on the part of the schooner did not, in any degree, contribute to the collision. It will then be seen that I consider all the parties in fault.

There is no controversy made in this case about the damages. They amount to quite a large sum; $5,074.22.

There is a question, and, so far as I know, a new one, as to the manner in which they should be assessed. If it were a case of collision between two vessels, neither being in tow of another, there would be no difficulty, where there was fault in both contributing to the collision. In such case, the loss is divided equally between the parties. Here it is somewhat different. It may be said that the tug and the schooner (the one being the agent of the other) constitute one party, and the propeller the other, and that the loss should be divided accordingly. That would make the propeller pay one-half of the loss, instead of one-third. But, on the whole, I can see no sufficient reason why the rule of equality should not apply to a case like this. The schooner, it is true, employed the tug to tow her into the lake, and the relations existing between the schooner and the tug may have been different, in consequence of this contract, from those which either sustained to the propeller, but the tug was obliged to perform its part of the contract with needful skill and diligence, and, if these were wanting, it was liable to its principal. And in this case it is clear, I think, if the tug had kept its own side of the channel,

no collision would have occurred; and, as has already been said, it cannot be asserted that the fault of the schooner did not contribute to the collision. Without, therefore, deciding as to the division of damages in all cases where there may be fault in the steamer and its tow, and in another vessel, producing collision, I am of opinion in this case that it will be equity to divide the loss equally between all the parties. It will therefore follow that a decree will be entered for $1,691.40 against the tug Brothers, and for a similar amount against the propeller Lady Franklin. Each party to pay his own costs.

Decree accordingly.

NOTE [from original report]. This opinion was, on appeal to the circuit court, affirmed by Davis, J. [Case No. 9,322.]

A tug with a tow is entitled to half the river, and is not bound to keep close to the pier. She has the character of a steamer—her duty after having exchanged signals with a propeller. The Alleghany [Case No. 204]. As to relative duties of tug and tow, see Cramer v. Allen [Id. 3,346]. As to respective liabilities of tug and tow, see The Angelina Corning [Id. 384]; The Alabama and The Gamecock [Id. 122]; The C. Y. Davenport [Id. 3,527]; The M. M. Caleb [Id. 9,680]; The Blanche Page [Id. 1,-523]; The M. A. Lennox [Id. 8,987]; The George Farrell [Id. 5,332]; The Deer [Id. 3,-787]; The Olive Baker [Id. 10,489]; The James A. Wright [Id. 7,190]; Taft v. Carter, 59 Barb. 67; Brown v. Clegg, 63 Pa. St. 51. A tug will not be held answerable for damages done by vessels in her tow, unless it be proved that the injury was owing to want of care and skill in the tug in performing the duties belonging to her. The Express [Case No. 4,598].

BROTHERS, The (COWELL v.). See Case No. 3,294.

BROTHERS, The (MAXWELL v.). See Case No. 9,322.

BROTHERS, The (MOODIE v.). See Case No. 9,743.

BROTHERSON (ROOT v.). See Case No. 12,-036.

BROTHERTON (HADE v.). See Case No. 5,892.