## Case No. 4,485.

### The ENERGY.

· [10 Ben. 158.] [1]

District Court, S. D. New York. Nov., 1878.

D. & T. McMahon, for libellant.
W. W. Goodrich, for claimants.

CHOATE, District Judge. This is a libel brought by Henry B. Crossett, the owner of the steamboat Wyoming, against two ice barges, the Energy and the M. F. Winch, for damages alleged to be caused by the improper and insecure mooring of the barges by the side of the Wyoming. It appears by the evidence that on the 18th day of January, 1876, the steamboat Olyphant was moored on the south side of South Fifth street pier, Hoboken, lying with her bow towards the North river, and some distance inside the head of the pier. The Wyoming was moored outside of the Olyphant, and astern of the two steamboats were two other steamboats, the Syracuse and the Austin, with a space between the sterns of the forward boats and the bows of the others of eight or ten feet. These steamboats were laid up for the winter and were properly and securely fastened to the pier, the Wyoming being fastened to the Olyphant and to the pier. The weather had been severe, and ice had been running in the North river and crowding into the slip the night before. On the afternoon of the 18th of January, the ice barges Energy and Winch were brought to the pier and moored alongside of the Wyoming. They were not quite as long as the Wyoming, but stood much higher out of the water, presenting to the wind a much

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

larger surface. The Energy was laid alongside of the Wyoming with her bow towards the river and her stem about on a line with the stem of the Wyoming. The Winch was laid alongside of the Energy, her stern being out and about on a line with the stem of the Energy. The Energy was securely fastened to the Wyoming, and the Winch to the Energy, by breast lines and spring lines, and there were lines from the Energy to the Austin and Syracuse, but there was at first no line from either of the barges forward to the pier. In the evening and after the man who superintended the mooring of the barges had left, at the suggestion of the shipkeeper on the Austin, a line was run from the bow of the Energy across the bows of the Wyoming and the Olyphant to the pier and there fastened to a spile. About two o'clock in the mornng, the wind being about south-east and blowing a fresh breeze, and the tide flood, the ice which filled the river half across to the New York shore was driven into the slip, against the port quarter and stern of the Winch, and the bows of the Energy, Wyoming and Olyphant with great force, and the lines between the Wyoming and Olyphant and between them and the pier gave way, and all four vessels were driven back into the slip with such force that the sterns of the Wyoming and Olyphant coming in contact with the bows of the Austin and Syracuse, tore them from their moorings and crowded them back and threw their bows out from the pier and separated them from each other, and about 30 or 40 feet of the joiner work aft on the port side of the Wyoming and the rail and joiner work on the starboard side of the Wyoming were crushed in and broken. The bows of the four vessels were driven in together towards the pier, and the upper works of the Wyoming on the port side were thus injured by grinding and crowding against the Olyphant, and the rail and joiner work aft by being driven against the other steamboats. The fastenings between the barges and those between the Energy and the Wyoming did not give way, and the line between the bow of the Energy and the pier either slipped, or was slackened up by the crowding of the bow of the Energy towards the pier.

The situation at the time these barges were moored required the greatest caution in securing them. The danger from the ice was imminent and well known to the parties who brought these barges to this place. It was well known that upon the flood tide, and especially with an easterly wind. the ice was liable to come in to this slip with great force. It hardly needs any evidence to show that the risk of damage from the ice to the steamboats moored at the pier would be greatly increased by having the two barges moored alongside of them. especially if they presented, as they did. a much larger surface to the wind than the steamboats; and the evidence is conclusive not only that the risk was increased. but that the barges were not properly nor securely moored as against this danger. There should have been lines leading from the barges to the pier both forward and aft, or forward to the pier and aft to the steamboats astern, so as to hold the barges without trusting to the fastenings between the barges and the steamboats, and to relieve the fastenings, by which the steamboats were held, from the increased strain caused by the barges being there. The line that was put out to the pier was of little or no use. It did not lead forward. It was no protection against a force applied in front and tending to crowd the barges further back into the slip. What happened was the natural consequence of the way in which the vessels were moored. It is obvious that with the two barges firmly secured to the Wyoming, the force of the ice and wind to cause the Wyoming and the Olyphant to work upon each other and to strain the fastenings between them and the pier. and between themselves, was greatly increased. That force was applied upon a different part of the Wyoming, at a higher level than it would have been if the barges had not been there. It was also applied with an increased weight and greater leverage.

It is claimed by the owners of the barges that there was no mooring spile on the pier to which they could have carried a line further forward than they did. This is clearly no excuse. The Wyoming was under no obligation to furnish them a mooring place, and if they could not safely moor there they should not have gone there at all. It is also no excuse that a person called a harbor master told them to moor alongside of the Wyoming. He is not shown to have had any official authority to direct the laying of these barges by the steamboats, so as to excuse those in charge of the barges from securing them properly and with safety to the Wyoming.

It is not made out by the evidence that the injury done was inevitable or would have been sustained if the barges had not been there.

It appears that the purpose of those having the barges in charge was to lay them up for the winter. further inside the slip, but they were prevented from getting them further in that day by the ice in the slip. Accordingly they tied up by the Wyoming as they did, thinking that that would do for the night, intending the next day, or as soon as the ice inside broke up, to take them further in. They are clearly responsible for the damage done. The claim of the libellant is sustained by the cases of Van Tine v. The Lake [Case No. 16,878]; The Johannes [Id. 7,332]; The Louisiana, 3 Wall. [70 U. S.] 164.

Decree for libellant with costs, with reference to compute damages, etc.