## THE LILIAN M. VIGUS, etc.

### (*District Court, S. D. New York.* December 22, 1884.)

1. WHARF—MOORING VESSELS—POUNDING.

    A vessel moored outside of another in an exposed situation, where, in case of a storm, she is liable to do damage by pounding, is bound to use reasonable diligence in watching for the approach of danger, and when danger is imminent to take all effective and prompt means that may be at hand to avert damage.

2. SAME—GALE—PRECAUTIONS—DAMAGES.

    The bark L. M. V., being thus moored at Weehauken, the captain knowing the danger from a north-east gale, *held* liable for damages done in the forenoon in a gale of extraordinary violence, there being means in the morning of removing the vessel to a safe place, or of stretching a warp to diminish her pounding against the libelant's vessel, although, in the height of the gale, it was too late to do either.

In Admiralty.

*Benedict, Taft & Benedict*, for libelant.

*Scudder & Carter* and *Geo. A. Black,* for claimants.

BROWN, J. On the twenty-ninth of March, 1881, the bark Lilian M. Vigus, in ballast, was taken to the Standard Oil Company's docks at Weehauken, to be loaded. Along the north side of the middle dock lay the ship Wendt; outside, and 40 feet astern of her, lay the libelant's ship Castine. The Vigus, on arrival there, was assigned a "stage berth" outside of and between the Castine and the Wendt. As thus moored, about one-third of her length aft lapped the fore part of the Castine, and the Vigus' bows lapped the starboard quarter of the Wendt. The Vigus was made fast to the two ships inside of her. That night the wind freshened. By 6 o'clock in the morning, when the captain of the Vigus came on deck, it was blowing a common gale from the north to north-east. The middle dock was about 900 feet long; the north dock, about 160 feet above it, was but 400 feet long. The Castine's bows were somewhat outside of the line of the north dock, so that she and the Vigus were exposed to the full force of the north-easterly gale. The wind increased until, between 10 and 11 A. M., it reached the extraordinary violence of 48 miles per hour. At 7:12 A. M. it was 32 miles per hour. The fenders of the Vigus, placed between her and the Castine, were crushed and broken; others from the Castine were injured, and both ships suffered from the pounding of the Vigus in this situation. This libel was filed to recover for the damage done to the Castine.

The defense is, in substance, inevitable accident; that the Vigus took the usual precautions, and used all reasonable diligence and effort to prevent the injury; and that it was occasioned solely by the extraordinary and unexpected violence of the gale. If upon the evidence I were convinced that such was the fact, I should hold the bark absolved. *The Grace Girdler,* 7 Wall. 203; *The Morning Light,* 2 Wall. 560; *The Austria,* 14 FED. REP. 298. But upon the evidence before me I do not think the Vigus has shown that all reasonable diligence and effort were made by her to avoid this damage. The berth which she occupied was known to her captain to be a dangerous one in an easterly wind; it was a matter of special conversation and comment between him and the captain of the Wendt the day before. Damage was known to have been suffered there previously in the same situation. Full knowledge of the danger, and of the fact of previous damage, made it incumbent upon the master of the Vigus to be alert in watching for the approach of danger; and, when its approach was imminent, to take all effective and prompt means that might be at hand to avert damage. During the night the wind was found to be freshening; at 6 in the morning, when the captain came on deck, it was already blowing a common gale. The danger was then obvious, and it was the captain's plain duty to take immediate steps to have his vessel kept off from the Castine by a warp, if that were practicable; or, if that were not practicable, then to have his vessel removed to a safer place. There is no reason to suppose that the

Vigus could not at that time have been moved without difficulty, by the use of a tug, to another berth within the slip where no damage would have been done.    It is usual to set a flag in the rigging as a signal that a tug is desired.    No such signal was set by the Vigus. Between 7 and 8 o'clock of that morning a tug-boatman was about these very docks for the purpose of getting such jobs, and his testimony is that at that time there would have been no difficulty in changing the berth of the Vigus.    Between 9 and 11 o'clock the superintendent of the wharf. on being consulted, suggested this means of relief.    The captains both thought the gale too violent to admit of change at that time, and that was then probably true.    A line was previously stretched from the bow of the Vigus (which was along-side the Wendt) straight across the slip to a post upon the north dock. The captain of the Wendt testifies that a similar line from the stern of the Vigus to the north dock, although angling, would have much relieved the pounding.    The captain of the Vigus and others think differently.    Though requested by the master of the Castine to get out such a line, no attempt to do so was made by the Vigus, and no signal was at any time given for a tug, or any attempt made to procure one.    The line stretched from the bow was borrowed from the Wendt; and the evidence leaves some question whether the failure to stretch a line from the stern to the north dock was not in fact owing to the Vigus' having no proper cable aboard.

I cannot assume that the injury was caused by the extraordinary violence of this gale, and by that alone, although the gale was in fact of rare violence.    The testimony shows that the berth was considered unsafe, and likely to do damage in ordinary gales.    When such a gale was approaching, or had begun, the captain of the Vigus, with such knowledge of the danger immediately impending, was, in my judgment, bound to take the ordinary precaution of securing his vessel by a warp, or of having her removed to a safer position; and it was his duty to do this promptly.    For failure to do so, he cannot be excused by showing that two or three hours afterwards, when the gale was at its height and the danger was greatest, no warp could have been got out, or any tug at that time have been of service, even if the defendant's proofs are sufficient in these respects.    I must hold the Vigus liable, because, when the danger was known to be imminent, no seasonable effort was made to keep her off from the Castine, or to move her to a safer berth, when the means of doing so were within call early in the morning, and would have been effectual.    *The Energy*, 10 Ben. 158.

Decree for the libelant, with costs.