Wallace, Circuit Judge.
These causes arise out of a collision which took place December 2, 1889, in the East river, just above Corlear’s Hook, between the steamer Express and the steamship Niagara, the latter being at the time in tow of two steam tugs, the Charm and Starbuck. A libel was filed by the owners of the Niagara against the Express, and on the petition of the owner of the Express the two tugs were also brought in as respondents. A libel was also filed by the owner of the Express against the Niagara and the two tugs. The district court dismissed the libel against the Express, and decreed in favor of her owner against the Niagara and the two tugs, and in favor of the owner of the Niagara for half her damages against the two tugs, adjudging that the Niagara and both tugs were in fault for the collision, and that the Express was not in fault. The owner of the Niagara and the owners of the tugs have appealed.
There is much in the record to suggest that the Express was culpable, as well as the other vessels, for the collision, and we have reached a contrary conclusion with considerable hesitation. During the operation of turning the Niagara around, she and the two tugs were practically a stationary object, and from that time until the collision their speed was not more than two knots an hour, exclusive of the current, which was about a mile an hour. The Express was a fast and powerful steamer, equipped with twin screws to facilitate her movements; she was unincumbered, being on an excursion trip merely to test her speed and qualities; the weather was clear; she saw the other vessels half a mile away, and there was ample sea room on either side of them to avoid them, and no intervening obstacle; and although they did not answer her signals, and were inattentive to her movements, and supinely acted on the assumption that she would keep out of their way, she could have shaped her course sufficiently far on either side of them, when sufficiently far away, to obviate any risk of collision, and perhaps ought to have done so when she slowed her speed after her last signals were not answered. Nevertheless, the learned district judge before whom the cause was tried in the court below found in substance, as appears by his opinion, that the collision would not have taken place, and the vessels would have safely passed each other starboard to starboard, had not the Starbuck, owing to inattention to the movements of the Express, hauled off strongly to the starboard, and been followed in that movement by the Niagara, when the vessels were so near together that the Express could not avoid collision, notwithstanding she immediately reversed her engines. The proofs fully sustain the findings, stated in his opinion, that there was no lookout proper on either of the tugs or on the Niagara, and that those in charge of the Charm and the Niagara were inattentive to the signals and movements of the Express. His conclusions in these *892 particulars cannot safely be disturbed by this court, as they involve doubtful questions of fact,«upon which the testimony is quite conflicting, and depending upon the credibility of the witnesses who were examined in his presence. Cooper v. The Saratoga, 40 Fed. Rep. 509; The Thomas Melville, 37 Fed. Rep. 271; The Francis T. Nicholls, 44 Fed. Rep. 302. Accepting these conclusions of fact as correct, the Express must be acquitted of any fault contributing to the collision. If she was culpable in any other respects, her fault was innocuous, because not a proximate cause.
The Niagara was condemned in the court below for several faults, among them.for following the Starbuck, when the latter made the fatal movement to starboard which brought about the collision. The proofs indicate that the arrangement for the performance of the towage service contemplated that the officers and men of the Niagara should participate with the tugs in her navigation, and that the master of the Niagara should allow the tugs to have practically command of her. From the time the tugs took the Niagara in tow, the captain of the Charm stood upon the Niagara’s bridge by the side of the master of the Niagara, and gave such instructions as he thought proper to the master of the Niagara, and the latter communicated the instructions to the officers and men. The order by which she was starboarded, to follow the final movement of the Starbuck, was communicated by the master of the Niagara to her quartermaster, who was at the wheel and executed the order.
It is settled law in this country that a tug, under the ordinary towage contract, is not the agent or servant of the tow in performing the service, but is an independent contractor; and consequently that the tow is not liable, upon the rule respondeat superior, for any loss occasioned by the faulty navigation of the tug. But none of the adjudged cases decide that a tow is not responsible for the consequences of a collision between herself and another vessel, when, by the conduct of her own agents or servants, she has been guilty herself, whether alone or by participation with the tug, of the wrong or negligence causing the collision. She is not responsible for the misconduct of the tug, but is for her own misconduct. The circumstance that her officers and crew are aboard of her at the time, and assisting in her navigation, does not make her liable for the consequences of a collision. But if through their fault, either of omission or commission, she collides with another vessel, she is answerable, and cannot escape liability because at the time she was in tow of a tug. This is so, because all those who participate in a wrongful act, either of malfeasance or misfeasance, whether they are principals or are merely agents or servants, are jointly and severally liable for the consequences.
The earliest reported decision in this country in which these questions were considered is Sproul v. Hemmingway, 14 Pick. 1. In that case, a brig towed astern by a steamboat upon the Mississippi river was brought in collision with a schooner lying at anchor. There was evidence tending to show that, in consequence of the negligence and bad management of *893 those who had the care and conduct of the steamboat, the vessel in tow, without any culpable negligence or unskillfulness of those who had charge of her, was thrown out of the track of the steamboat, and so caused the collision. The jury were instructed in the court below that if the collision took place through the negligence, unskillfulness, or misconduct of those who had charge of the steamboat, the owner of the brig was not liable. The appellate court, Chief Justice Shaw delivering the opinion, applying the rule of respondeat superior, sustained the correctness of these instructions. In the course of the opinion he pointed out some differences between the case of a vessel towed astern and one lashed to the tug, using the following language:
“On board the ship towed astern by means of a cable, something may and ought to be done by the master and crew in steering, keeping watch, observing the obeying orders and signs, and if there be any want of care and skillfulness in the performance of those duties, and damage ensue, then the case we have been considering does not exist; the damage is attributable to the master and crew of the towed ship, and they and their owners must sustain it. * * * Then, supposing all duties faithfully performed on board the towed vessel, and the damage to be caused by the negligence or misconduct of the master and crew of the steamboat, there is no difference between the case of the side ship, which is wholly passive, and the ship astern, which is partially so.”
In the case of The John Fraser, the first adjudged case in which the questions were considered by the supreme court, (21 How. 184,) the collision was between a vessel in tow by a steam tug and a vessel at anchor, in which both the tug and the vessel were in fault. The court exonerated the tow, because it appeared that she had not been guilty herself of any fault or negligence; but the opinion implies that she would not have been exonerated if she had not adopted active measures herself to prevent collision. The court said:
“It is indeed said by some of the witnesses that if she had put her helm to the larboard, instead of to the starboard, as soon as she was cast off, she might have passed in safety on the other side of the James Gray, but the weight of the proof is clearly to the contrary, and we are convinced that she adopted the only chance for safety by putting her helm to starboard, and endeavoring to pass on the same side that the steam tug had passed. ”
The case of Sturgis v. Boyer, 24 How. 110, in which the collision was between a ship in tow of a steam tug to which she was lashed and a lighter, contains a discussion of the general doctrine, and the opinion cites and follows Sproul v. Hemmingway and The John Fraser. In The Virginia Ehrman, 97 U. S. 309, the collision was between a ship in tow of a tug and a dredge lying at anchor. Both the tug and ship were held to be in fault, the tug because she unnecessarily took the ship into too close proximity to the dredge, and the ship because she ought to have observed the dredge and avoided her by porting her helm. Some expressions in the opinion in the case of The Doris Eckhoff, recently decided by this court, (1 U. S. App. 129, 1 C. C. A. 494, 50 Fed. Rep. 134,) may be taken to imply that the tow is not liable for the consequences of a collision between herself and another vessel, when her only *894 fault has been that of passive acquiescence in following the movements of the tug. These expressions were addressed to the case in hand, and ought not to be misconceived. In that case the tug, instead of observing a local law which required vessels to be navigated along the middle of the river, had taken the tow on one side of the channel. The cause of the collision, however, was a rank sheer, culpably made by the tug just as she brought the tow nearly opposite another vessel proceeding in a, contrary direction. The tow ported her helm, and did all in her power to counteract the fault of the tug, but without avail; and in the opinion, this circumstance is commented on as controlling. What the judgment really decides is that the tow was not responsible, wholly or in part, for the consequences of a remote fault, committed by steering after the tug outside the midchannel of the river.
The officers and crew of the Niagara were none the less the agents and servants of that vessel, because in performing their duties in navigating her they took their orders from the master of the Charm. Consequently, the Niagara, because of their participation in the fault by which the Express was injured, is jointly liable with the tugs for the injuries done to the Express. Both tugs are liable, because they were engaged in a joint undertaking, were the property of the same owner, and the collision was caused by the concurrent negligence of the master of each.
The decrees below properly apportioned the damages for the injuries of the Express between the Niagara and the tugs, and divided the damages sustained by the Niagara between that vessel and the two tugs. The decrees are affirmed, with the costs of this court to the owner of the Express. As between the other parties, no costs in this court are allowed.