## THE ANERLY.[1]

### SHERBORNE v. THE N. & W. NO. 4 and BOSTON TOWBOAT CO.

(District Court, S. D. New York.    October 8, 1893.)

1. SHIPPING—ANCHORED VESSEL—DANGER OF DRIFTING—DUTY.

When there are known indications of danger of the drifting of an anchored vessel from any extraordinary cause, whether ice, storm, or position, ordinary prudence requires more than one anchor to be let go, and the omission of this precaution is at the vessel's risk.

2. COLLISION—ANCHORED VESSEL — HARMLESS CONTACT — ANTICIPATION OF LATER INJURY—NECESSITY OF CHANGING POSITION.

When two barges drifted in the ice alongside a steamship, and remained there two or three hours, and until the change of the tide, when, in swinging, the ship was injured, but during the interval before the turn of the tide the ship had made no attempt to extricate herself from her dangerous position, as she might have done, *held*, that the ship was partly liable for the damage.

3. SAME—THREE VESSELS IN FAULT—DIVISION OF DAMAGES.

Where two barges, entangled, and practically one mass, drifted upon an anchored vessel, which made no effort to avoid the damage which subsequently was sustained by her, *held*, that the anchored vessel should pay one-half the damage, and the other half should be divided between the two barges.

In Admiralty.    Libel for collision.    Decree for divided damages.

Convers & Kirlin, for libelant.

Robinson, Biddle & Ward, for the N. & W. No. 4.

Wilcox, Adams & Green, for the Boston Towboat Co. and the Merryman.

BROWN, District Judge.    The primary cause of the damage to the libelant's steamer Anerley was the drifting of the two barges in the ice during the night of February 22d, whereby the two came alongside the Anerley.    No immediate damage was done. The damage arose afterwards, upon the change of tide from flood to ebb, when the relation of the three became somewhat complicated upon swinging to the southward, and the Anerley had a plate stove in before the vessels got clear.    I am satisfied that the two barges, after they got alongside the Anerley, made all reasonable efforts on their part, and did as well as they could, to get clear, and to avoid any subsequent damage.    If their original drifting upon the Anerley was without any fault on their part, the libel should be dismissed.

The case differs, however, from others that are cited on behalf of the respondents, in that both the defendant vessels had ample notice of the presence of an unusual quantity of ice in the bay, and of the consequent necessity of taking special precautions against the liability to be carried away by the ice; to say nothing about their place of anchoring, nearly in line with each other and with the Anerley.    Both barges had two anchors.    Neither put out

---

[1] Reported by E. G. Benedict, Esq., of the New York bar.

more than a single anchor,—except that the Merryman, a few minutes before she began to drag, when it was too late, dropped her second anchor, and soon drifted upon the N. & W. No. 4, which did not drop her second anchor at all. To put out both anchors, would have been but an ordinary precaution under the circumstances shown in the evidence. The danger from ice was not sudden or unexpected; but, as I have said, had been long evident.

The neglect of reasonable precautions is not to be justified by citing instances of the negligence of other vessels. I do not find any case in which, under analogous circumstances, such accidents have been adjudged inevitable. On the contrary, where there are known indications of the danger of drifting from any extraordinary causes, whether from ice, storm, or position, ordinary prudence requires that both anchors be let go; and the omission of this precaution is held to be at the vessel's risk. The Sapphire, 11 Wall. 164, 170; The Energy, 10 Ben. 158; The John Tucker, 5 Ben. 366; The Eloina, 10 Ben. 458; The Lilian M. Vigus, 22 Fed. 747; The Mary Fraser, 26 Fed. 872. The English authorities are equally clear. The Despatch, 14 Moore, P. C. 83; The Egyptian, 1 Asp. (O. S.) 358; The Maggie Armstrong, 2 Asp. (O. S.) 218; The John Harley, Id. 290.

It is further urged that the volume of ice was so great that two anchors would have made no difference. Very clear proof would be required to sustain a defense of that kind in behalf of those whose negligence is proved. In the present case there is nothing amounting to proof at all; but only certain opinions of persons interested. On the other hand, the fact that the ice parted not long after the two barges had drifted alongside the Anerley, and the uncertainty whether the steamer, though having out but a single anchor, drifted at all, show, as it seems to me, that this defense is mere speculation. I must, therefore, hold both barges in fault for getting into a false position alongside the Anerley, which was the original cause of the subsequent damage.

But I think the Anerley is also to blame for not taking means which were easily within her power, and which might safely have been employed, to avoid the subsequent damage. That there was danger to be apprehended from the swinging of the vessels to the southward on the change of tide from flood to ebb, is manifest. The barges were alive to this danger. The Anerley seems to have shown entire indifference to the result. There was an interval of between two and three hours during which the Anerley might have been removed out of the way or have slipped her cable. Her inaction would almost seem to justify the hypothesis that she supposed the barges alone were likely to suffer damage; and that she would leave them to get out of it as they could. The situation, however, plainly involved danger to them all; and it was the duty of the Anerley as much as of the barges, to do what was easily within her power during the considerable interval that elapsed before the change of tide, to avert the danger. The Sapphire, 11 Wall. 164.

Decree for the libelant for one-half of the damages against both defendants.

---

(November 23, 1893.)

A motion was afterwards made to divide the loss in the proportion of one-third to each vessel.

BROWN, District Judge. It is unnecessary to consider at this time what should be done in cases like The Brothers, 2 Biss. 104, and The Peshtigo, 25 Fed. 488, where three vessels are adjudged in fault; because in this case, before any damage arose the two barges became entangled fast together and were practically one mass, and therefore, as respects the subsequent negligence of the steamer, and the resulting damage, they should be treated as one. They did what they could to get out of the way, and to avoid the plain danger from swinging on the turn of the tide. The steamship, as I find, was culpably indifferent and made no such effort. Under such circumstances she should pay half the damages. The two barges, as between themselves, divide the other half of the damages, because it was by the fault of each barge that they got into a false position and became entangled as one mass near the steamer, and thereby caused the danger. See The Express, 3 C. C. A. 342, 52 Fed. 890; The Ice King, 52 Fed. 894.