## THE RESCUE.

### THE JOHN C. BRADLEY.

#### LAMBIE v. THE RESCUE and THE JOHN C. BRADLEY.

(District Court, E. D. Pennsylvania. June 22, 1896.)

1. TOWAGE—NEGLIGENCE OF TUGS.

Where a ship entirely without motive power, while in tow of two tugs lashed one to each quarter, whose masters had sole charge of the navigation, was run upon a sunken wreck on the edge of the Schuylkill river, which wreck was known to the masters of the tugs but not to the ship's officers, *held*, that the tugs were at fault, and liable for the damage to the ship, their only defense of a sudden and irresistible "puff" of wind having failed on the proofs.

2. SAME—JOINT LIABILITY OF TUGS.

Two tugs engaged in towing a ship, under a contract with one having charge of their services, and under the joint and concurrent command of their masters, are to be treated as one vessel or party, so as to make them jointly liable, for negligent navigation resulting in damage to the tow. The Express, 3 C. C. A. 342, 52 Fed. 890, followed.

This was a libel in rem by one Lambie, master of the ship Windsor Park, against the tugs Rescue and John C. Bradley, to recover damages for injuries to the ship from alleged negligent towage.

Curtis Tilton and Henry R. Edmunds, for libelant.

Horace L. Cheney and John F. Lewis, for respondents.

BUTLER, District Judge. The libelant, master of the ship Windsor Park, engaged of James McCaulley the two tugs named, to tow the ship from Cathrall's Wharf, on the Delaware river to the Atlantic Refining Company's wharf, on the Schuylkill. The tugs lashed themselves to the ship the Rescue attaching herself to the starboard quarter and the Bradley to the port quarter. The masters of the tugs stationed themselves on the ship and assumed entire management and control of her movements. The ship was without motive power of her own, and entirely subject to the motions of the tugs. When nearing their destination, and in a bend of the river Schuylkill off Point Breeze, the ship was run upon the wreck of the steamer Maryland, which lay to their right as they ascended the channel. The wreck was on the sloping bank of the river extending to the side of the channel where it had been for several months. The masters of the tugs were familiar with its existence there, while the officers of the ship had no knowledge on the subject. The ship was light, and easily managed. In her situation between the tugs she was helpless.

The libel charges numerous faults, as cause of the accident. It

is unnecessary however, to examine each particularly, in view of the circumstances, and especially of the only substantial defense set up, to wit, that a sudden and irresistible "puff of wind" drove the ship upon the wreck, notwithstanding all available means were used to prevent it. It seems to be entirely clear that if this defense is not sustained the respondents must be held accountable for the loss. In the absence of such sudden and irresistible blow there was nothing in the way of performing the contract of towage successfully; and the failure to perform it, in such case, must therefore be attributed to fault of the respondents. It consequently results that the only material question presented is: Do the proofs sustain this defense? While the direct testimony is conflicting the circumstantial evidence as well as the weight of all the proofs combined, is against the respondents. It would be useless to analyze and discuss the testimony. After a full examination of it I have reached the conclusion stated. Some wind was encountered throughout the voyage; it was not at any time, however, serious, and was little if any greater at the time of grounding than previously. If it had been serious enough to create apprehension of danger previously, the respondents should have anchored, or sought harbor; the fact that they did not shows that they saw no occasion to apprehend danger. Indeed they admit that the wind was not serious until the moment when they reached the point opposite the wreck, when, as they allege, the irresistible "puff" came. The allegation is improbable, and the circumstances justify a suspicion that it is made to cover the consequences of the respondents' carelessness; at all events the clear weight of the evidence is, in my judgment, against it. I have no doubt that if the vessels had been kept sufficiently westward in the channel, and managed with ordinary skill, the accident would not have occurred. The testimony from the Darial, a large vessel which passed up the river immediately in the rear of the tugs and their tow (which is entirely disinterested) together with the character of the marks left on the bottom of the tow by her contact with the wreck, as shown by the photograph taken, seems to be conclusive on the subject.

The tugs are jointly liable for the fault. They united in a common undertaking, under a contract with one having control of their services, if he was not their owner, under the joint and concurrent command of their masters; and they must therefore be treated as one vessel, or party; The Express [3 C. C. A. 342] 52 Fed. 890. That they so understood their relations is shown by their joint suit against the city of Philadelphia to recover for the loss they may sustain by reason of their accountability in this action.

A decree may be prepared in favor of the libelant.