## THE HERM. THE R. W. McDONALD. THE COASTWISE. *

(Circuit Court of Appeals, Fourth Circuit. April 12, 1920.)

No. 1758.

1. Collision ⊂⇒70—**Ordinarily not negligence for moored vessel to extend beyond pier.**

It is not negligence for a vessel to extend into the channel beyond the end of the pier to which she is moored, unless it prevents or obstructs navigation, or special circumstances make the position dangerous.

2. Collision ⊂⇒71(3)—**Vessel held at fault for mooring with stern projecting into fairway.**

A vessel *held* at fault for mooring, at a time when her master knew that drifting ice made it difficult to keep the anchored vessels from dragging, at a pier in such a manner that she projected about 40 feet into the fairway, when anchored barges, liable to be dragged by the drifting ice upon her, were within plain view.

3. Collision ⊂⇒22—**Collision after both parties used proper skill to avoid it is "inevitable accident."**

A collision is not inevitable merely because it might have happened if all the barges involved had used due care; but "inevitable accident" means a collision which occurs when the parties have endeavored by every means in their power, with due care and caution, and proper display of nautical skill, to prevent the occurrence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inevitable Accident.]

4. Collision ⊂⇒71(2)—**Barges which did not drop additional anchor held at fault for collision with moored vessel.**

Two barges, which dragged their anchors under the pressure of drifting ice for an hour or more, and which did not drop the extra anchor which each barge had, and one of which was left at a time of danger in charge of an inexperienced seaman, *held* at fault for collision with a vessel moored at a pier, so as to extend into the fairway; but a third barge, which had no extra anchor available, *held* not negligent.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libel by E. Andersen, as master of the steamship Herm, against W. T. Reed, master of the barge R. W. McDonald, and others, for damages arising from collision. From a decree holding libelant solely at fault, libelant appeals. Modified, to charge damages equally against libelant and two of the three barges.

Leon T. Seawell, of Norfolk, Va., and Stephen C. Fordham, of New York City (Hughes, Little & Seawell, of Norfolk, Va., and Duncan & Mount and O. D. Duncan, all of New York City, on the brief), for appellant.

Edward R. Baird, Jr., of Norfolk, Va. (Baird & White, of Norfolk, Va., on the brief), for the R. W. McDonald.

George W. P. Whip, of Baltimore, Md., and Floyd Hughes, of Norfolk, Va. (Hughes, Vandeventer & Eggleston, of Norfolk, Va., and Lord & Whip and J. Walter Lord, all of Baltimore, Md., on the brief), for Barge No. 19.

Israel A. Washburne, of New York City (Harrington, Bigham &

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied July 10, 1920.

Englar, of New York City, and Harry E. McCoy, of Norfolk, Va., on the brief), for the Coastwise.

Before PRITCHARD and WOODS, Circuit Judges, and WAT-KINS, District Judge.

WOODS, Circuit Judge. On the evening of January 6, 1918, the Norwegian steamship Herm was moored on the north side of the Chesapeake & Ohio coal pier No. 12 at Newport News. Another steamer, moored ahead at the same dock, took up so much space that the Herm extended beyond the pier 35 to 40 feet. A Holland steamer, moored on the south side, extended about the same distance beyond the pier. Several days before, at different times, the barges McDonald, Coastwise, and No. 19 had anchored about a quarter of a mile below the pier. Owing to the unusual severity of the weather, the ice in Norfolk harbor for a week or more had been causing vessels to drag their anchors, thus bringing upon mariners much difficulty and anxiety. About 3 or 4 o'clock on the morning of January 7 the three barges began to drag toward the pier at which the Herm was moored; the McDonald being nearest the pier, and the Coastwise between the McDonald and the No. 19. Upon reaching the south side of the pier, the McDonald struck the Holland steamer, and immediately after collided with the Herm, doing her considerable damage.

The Herm libeled the McDonald, alleging negligence in her navigation in several particulars. The McDonald, denying negligence on her part, brought in the Coastwise and the No. 19, alleging that through their negligent navigation she was forced upon the Herm. Upon evidence taken by deposition, the District Judge dismissed the libel without a formal opinion, saying in his decree, however, that the Herm alone was negligent.

[1, 2] We think the evidence clearly convicts the Herm of negligence. It is true that under ordinary circumstances it is not negligent for a vessel to extend into the channel beyond the end of the pier, unless it prevents or obstructs navigation, or other circumstances make the position dangerous. Chesapeake Steamship Co. v. Frank Hand, Master of British Steamship Hawkhead (C. C. A.) 266 Fed. 641; The Wm. M. Hoag (D. C.) 101 Fed. 846; The Jason (D. C.) 257 Fed. 438; The Johannes, Fed. Cas. No. 7332, 10 Blatchford, 478; The Canima (C. C.) 32 Fed. 302. In this case, however, the master of the Herm knew that the ice conditions in the harbor had caused his vessel and many others to drag. Without any emergency requiring it, he left a safe anchorage and moored at a dock, with his vessel extending 35 or 40 feet into the fairway, seeing the three barges a short distance away, unable to control themselves by their own power, and all liable to be dragged helplessly upon him. This seems to us negligent seamanship.

[3] All the barges claim that their participation in the collision was due to inevitable accident. It is true the accident might have happened if all the barges had used due care, but that is not sufficient to make out the defense.

"Inevitable accident, as applied to cases of this description, must be understood to mean 'a collision which occurs when both parties have endeavored by every means in their power, with due care and caution, and proper display of nautical skill, to prevent the occurrence of the accident. The Locklibo, 3 W. Rob. 318; The John Frazer, 21 How. 184.'" Union Steamship Co. v. N. Y. & Va. Steamship Co., 24 How. 307, 16 L. Ed. 699; The Mabey, 81 U. S. (14 Wall.) 204, 20 L. Ed. 881.

While there is conflict in the testimony on the point, it is certain that the three barges, while dragging, came together, and that the pressure of the Coastwise and the No. 19 influenced the movement of the McDonald and contributed to the collision.

[4] The dangerous ice conditions existing in the harbor for about a week had put the master of every vessel anchored there on notice that his vessel was liable to drag and come in collision with other vessels. Ordinary care required every master thus warned to be ready, and to use all his skill and every available appliance and method to hold his anchorage. So far from discharging this duty, both the master and the mate of the McDonald left her in charge of Dowler, a comparatively inexperienced seaman about 19 years old, from whom capacity to meet an emergency was not to be expected. Assuming the reason of the master for going ashore to be sufficient, the evidence leaves no doubt that by proper effort he could have returned after the dangerous conditions became manifest. The mate left on the day before the collision, in the midst of the dangerous conditions, to get food. He gave no excuse for not sending for food, and remaining in charge of his vessel. Young Dowler, instead of keeping watch, was asleep while the McDonald was dragging, until a very short time before the collision. For the one anchor used he had out only 50 fathoms of chain, when he had available at least 110 fathoms. The expert testimony is undisputed that, the longer the chain, the greater the power of the anchor to hold the vessel.

The McDonald and the Coastwise had two anchors, but no effort was made to use more than one. The masters of the three barges charged with negligence testified that one anchor will hold a vessel against moving ice better than two, for the reason that the anchor chains are apt to get crossed, and that then they will not cut the ice as well as one chain. Carmichael, a disinterested expert, testified strongly to the contrary, saying that, if the anchor chains are properly put out, not only will the two anchors hold better, but the two chains will cut the drifting ice more effectively; and Peterson, another barge master of experience, testified that, while there was a difference of opinion on the subject, it was better to put down both anchors. The weight of the evidence seems strongly in favor of the use of two anchors.

Assuming doubt, however, on that question, and assuming that there may be conditions of the ice in which one anchor will hold better than two, under the conditions which confronted the masters of the barges, it seems plain that, when they found they could not hold their vessels with one anchor, they should have used two. This was admitted even by the masters of the McDonald and the Coastwise. The dragging was very slow, and for an hour or more the navigators of the barges had every opportunity to know that they were menacing the Holland steamer and the Herm. We can see no excuse for failing to try to stop their

vessels by the use of two anchors. The Sapphire, 11 Wall. 164, 170, 20 L. Ed. 127; The Anerly (D. C.) 58 Fed. 794, and authorities cited; The Ciudad De Reus, 185 Fed. 391, 107 C. C. A. 447. This failure to use every means in their power to hold their vessels was negligence on the part of the navigators of the McDonald and the Coastwise. The drift of the ice floes ceased immediately after the collision, and it is highly probable that the use of two anchors would have at least so retarded the movement of the barges that the force of the drift would have been spent before they reached the Herm, and the collision would not have occurred.

The No. 19 must be acquitted of negligence. She had lost an anchor the night before, and had had no opportunity to procure another.

A decree will be entered, charging the damages equally on the Herm, the McDonald, and the Coastwise.

Modified.