BEATY, (KNOWLES v.) See Case No. 7,-896.

BEATY, (UNITED STATES v.) See Case No. 14,555.

BEAUREGARD, (CASE v.) See Case No. 2,487.

## Case No. 1,199.

### The BEAVER.

### [2 Ben. 118.][1]

District Court, S. D. New York. Jan. Term, 1868.

COLLISION OFF QUARANTINE—VESSEL AT ANCHOR.

1. Where a vessel at anchor is struck by one in motion, the presumption of law is, that the collision is caused by the negligence of the latter, unless the former is anchored in an improper place.

2. Where a brig came into New York harbor from sea, and anchored, in a strong wind and heavy sea, about 400 feet to windward of another vessel which was already anchored, dropping but one anchor, and was left without a sufficient watch on deck, and, the wind and sea increasing, her chain parted, and she drifted down upon the other vessel, which had paid out all the chain possible, to avoid her as she drifted, and her other anchor was not dropped till after she was afoul of the other vessel: *Held*, that the brig was in fault in anchoring where she did, under the circumstances, and in not having a proper watch, and in not dropping a second anchor when the wind and sea increased; and that she was liable for the damages.

In admiralty.

W. R. Beebe and A. J. Heath, for libellants.

Stevens & Reymert, for claimants.

BLATCHFORD, District Judge. This is a libel for a collision which took place about six o'clock in the morning of the 16th of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

August, 1867, at the Quarantine ground in the lower bay, in the harbor of New York, between the brig Julia F. Carney, owned by the libellants, and the brig Beaver. The Julia F. Carney was at anchor, and had arrived from Havana four days previously. The libel alleges, that the Beaver came in from sea during the night before the collision, with a strong southerly and easterly breeze, and anchored too near to the Julia F. Carney, with only one anchor out, her port anchor, and directly to the windward of and ahead of the Julia F. Carney; that, at about six o'clock the next morning, the wind continuing to blow a fresh breeze from the south and east, the Beaver struck adrift, and dragged afoul of the Julia F. Carney, carrying away her bowsprit and all her head gear, and otherwise seriously damaged her; that the Beaver had not at the time a proper lookout and watch; and that the collision would not have occurred if the Beaver had been properly and safely moored a proper distance from the Julia F. Carney, or had suffered her other anchor to run when she first began to drift, or if her braces had been promptly checked so as to give her the proper sheer.

The answer avers, that the Beaver arrived in port from sea at about one o'clock in the morning, in charge of a duly licensed pilot, who anchored her at the lower Quarantine by a good and sufficient anchor and chain cable, about four hundred feet directly ahead of the Julia F. Carney, in the tide way of the anchorage ground; that, by the force of the wind and sea, the chain cable of the Beaver parted, and she struck adrift; that her crew immediately thereafter let go another anchor with a sufficient chain cable; that, by force of the winds and waves, and not by any negligence, she was driven against the Julia F. Carney; that the collision was the result of an inevitable accident; that, when the Beaver struck adrift, the watch on the Julia F. Carney had notice thereof, and were hailed by the crew of the Beaver to pay out chain, and had time and room enough to do so, but failed to do so; and that the collision was caused by such failure.

As the Julia F. Carney was at anchor, and was run into by the Beaver while the Beaver was in motion, the presumption of law is that the collision was caused by the fault of the Beaver, unless the Julia F. Carney was anchored in an improper place. 1 Pars. Mar. Law, bk. 1, c. 7, p. 201, note 8, and cases there cited. It is not shown that it was improper for the Julia F. Carney to anchor where she did anchor. No such defence is set up in the answer, and there is nothing in the evidence to warrant any suggestion of the kind. It is incumbent, therefore, on the Beaver to establish that the collision was not caused by her fault.

I think that the evidence, instead of establishing a case of inevitable accident or vis major, shows that the collision was oc-

casioned by the fault and negligence of the Beaver. She anchored, in a strong wind and a heavy sea, within four hundred feet, according to the statement in the answer, of the Julia F. Carney, and directly ahead, and to the windward, of her, in the tide way. She had only her port anchor out, and, as the wind and sea increased, she did not put out another anchor. The chain cable of her port anchor parted, and she began to drift. The tide was flood. The parting took place under water near the anchor, and the fact of such parting was not known until the day after the collision. The crew of the Julia F. Carney, seeing the Beaver drifting toward their vessel, paid out all the chain they could to their own anchor, in a prompt manner, but, notwithstanding this, the Beaver came broadside on against the bows of the other vessel, and it was not until after the collision, that the Beaver's starboard anchor was run out. It was negligence in the Beaver to anchor so near to the Julia F. Carney, and not to put out another anchor when the wind and the sea increased. The Volcano, 2 W. Rob. Adm. 337; The Massachusetts, 1 W. Rob. Adm. 371; The Northampton, 1 Spinks, 152. It was also negligence in her not to have got out her second anchor in season to have avoided the collision. This, on the evidence, might have been done by prompt action on her part. The reason why it was not done is shown by the evidence to have been because there was no sufficient watch on the deck of the Beaver, the drifting of the vessel having been discovered by the cook of the Beaver, who was on deck, and announced it to the master. There was no person but the cook on the deck of the Beaver at the time, and there had not been for some time before. The collision might have been avoided by ordinary care and skill and common foresight on the part of those in charge of the Beaver. If there were in the case nothing but the mere parting of the cable, unattended by any contributory negligence, the case might be different.

There must be a decree condemning the Beaver, with a reference to a commissioner to ascertain and report the damages caused to the libellants by the collision.