QUEEN, The (UNITED STATES v.). See Cases Nos. 16,107–16,109.

QUEEN (WEIGHTMAN v.). See Case No. 17,359.

---

## Case No. 11,506.

### The QUEEN OF THE EAST.

### The CALYPSO.

[4 Ben. 103.] [1]

District Court, E. D. New York. March, 1870.

COLLISION — NEW YORK HARBOR — VESSELS AT ANCHOR—FOUL BERTH.

1. The brig C. was at anchor in a proper place in New York harbor. The ship Q., also at anchor there, dragged her anchor, the wind being heavy from the south-south-west, and the tide flood. She dragged by the brig and brought up astern of her. Shortly after, the brig began to drift down upon the ship. It was claimed by the brig, that this was in consequence of the ship's anchor catching in the brig's chain, while it was claimed by the ship that the brig paid out her chain. When the tide turned, the vessels swung together, injuring both of them. *Held*, that the brig was anchored in a proper place;

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

2. There was negligence in the ship's being allowed to drag her anchor, resulting probably from the master's being ashore and the chief mate off duty;

3. If the ship's chain became entangled with that of the brig, the berth was foul, and the damages must be held to be the result of that negligence;

4. The brig was entitled to room enough to swing in safety on as long a scope of chain as was necessary to prevent her from dragging, and if, to prevent that, she did pay out chain, she would not be held responsible for thereby coming into dangerous proximity with the ship;

5. The ship was in either event liable for the damages.

These were cross libels, filed by the respective owners of the brig and ship above named, to recover the damages occasioned by the vessels' coming in collision in the harbor of New York, in the night of January 2d, 1870. On behalf of the brig, it was alleged that she was lying properly anchored off the Battery, the tide being flood, and the wind blowing heavily from south-south-west when, about 9 o'clock in the evening, the ship dragged her anchors and dragged by the brig, bringing up astern of her; that it was then found that the ship's cable had become foul of the brig's cable; that the ship did nothing, though requested to clear the cables, and, on the turn of the tide, the vessels swung together, injuring the vessels seriously. On behalf of the ship, it was alleged that she was started adrift by a squall, that she was allowed to drift by the brig, to give her a clear berth, and brought up astern of her; that the brig, shortly after, began to pay out chain and drift down upon the ship, which could not pay out more chain herself, because, if she had, she would have swung against a pier; that the brig drifted close under the ship's bows, and when the tide turned, the vessels swung together.

Beebe, Donohue & Cooke, for the brig.

Evarts, Southmayd & Choate, for the ship.

BENEDICT, District Judge. It appears quite plainly from the evidence that there was negligent management on board the ship, in permitting her to drag as she did, owing doubtless to the circumstance that the master was on shore, the chief mate off duty, and the second mate alone in command. Accordingly, if, as a result of such negligence, the ship was placed in dangerous proximity to other vessels at anchor in the harbor, she must be held responsible for all damages arising out of her improper location.

There is no disputing, upon the evidence, that the brig was anchored in a proper place; that the precautions taken by her to prevent dragging, were proper and successful; that those on board of her were watchful and, when the ship was seen dragging towards them on the flood tide, took the proper steps to enable her to pass in safety; and that, when, upon the turn of the tide, the ship swung down upon the brig, everything possible to be done, on the part of the brig, to avoid damage, was done. As the evidence stands, I incline to believe the statement of those on board the brig, that the ship, in dragging past them, caught their chain, and by reason of that entanglement, the brig was started towards the ship, after she had brought up under the brig's stern. The manner, in which the ship is stated to have passed the brig, does not appear to me improbable, when the currents of the locality, the wind and the tide, the weight of the ship and the nature of the bottom are considered. Nor does it appear impossible that the ship's chain and anchor should have become entangled with those of the brig, as is claimed on her part. Certainly, the impossibility is not so manifest as to require me to hold, in the face of the positive denial of eight witnesses from the brig, that the brig's chain was paid out after the ship brought up astern, and the vessels, by that means, brought nearer to each other. If it be true then, that, when the ship ceased to drag, she was under the stern of the brig with her chain entangled with that of the brig, the berth was foul, and the damages which ensued when the vessels came together upon the turn of the tide, must be held to be the result of the negligence which placed the ship in that position. Furthermore, I am of the opinion that the ship would be responsible, if the facts were as claimed in her behalf upon the hearing. Under the admitted circumstances, the brig having selected a proper place of anchorage, was entitled to room to swing in safety upon as long a scope of chain as might be necessary to prevent her from dragging, and if, to avoid dragging, she was compelled to pay out chain after the ship had brought up under her stern, and where a nearer approach involved danger of collision upon the turn of the tide, the damages arising from such proximity could not be chargeable to the brig as resulting from any neglect on her part, but must be held to have arisen from that neglect which permitted this large ship to drag at a single anchor so long a distance, and placed her under the stern of the brig when a few fathoms change in the position of the brig would render a collision imminent. The decree in the first case must, therefore, be that the libellants recover of the ship, "Queen of the East," the damages by them sustained, by reason of the collision in question, with costs. In the second case, the libel against the brig must be dismissed with costs.