### THE WALLACE.[1]

### LUCKENBACH *et al.* v. THE WALLACE.

(*District Court, E. D. New York.* March 28, 1890.

**1. COLLISION—VESSELS AT ANCHOR—FOUL BERTH.**
The barge W. went inside the Delaware breakwater in a storm, and anchored near the barge P. After some hours the W. began to drag her anchor, and fetched up very near the P., and in such a position that it was certain that she would collide with the P., when the tide changed. It was in her power to have changed her position. She did not do so, and on the turn of the tide collided with the P. *Held*, that the W. was liable.

**2. SALVAGE—HOLDING BARGE IN GALE—AMOUNT.**
After the collision, a tug held the W. while the anchors of the latter were being raised, and then towed her further up the breakwater. The service occupied five or six hours. The sea was rough, and there was danger of the W.'s going ashore. *Held*, that the service was a salvage service, and $250 a proper compensation therefor.

In Admiralty.

Action by the owners of the barge Plymouth and the tug Luckenbach, to recover, in one action, damages to their barge Plymouth from collis-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ion with the barge Wallace, and salvage for the services of their tug Luckenbach, rendered to the same barge Wallace.

*Peter S. Carter*, for libelant.

*Owen, Gray & Sturges*, for claimant.

BENEDICT, J. The barge Plymouth, in tow of the tug Luckenbach, went into the Delaware breakwater for refuge, and was anchored three or four hundred feet to the west of the eastern entrance. The Luckenbach hung on to her stern by a hawser of 150 feet in length. On the night of November 20th, between 7 and 8 o'clock P. M., the barge Wallace, bound on a voyage from Philadelphia to Boston, in tow of the tug Hercules, went into the Delaware breakwater, and anchored in the middle of the breakwater. On the morning of the 21st she moved up to the west end, and anchored about 200 yards away from the breakwater, and about two or three hundred yards to the north of the Plymouth, already there, and, as above stated, at anchor. About half past 7 in the evening the Wallace began to drag in a strong north-east wind. After dragging about a half of an hour, she fetched up on her second anchor at a point some 70 or 80 feet from the Plymoth, then right astern of her. On the part of the libelant the claim is that, before the tide turned, the Wallace dragged down upon the Plymouth, doing the damage complained of. On the part of the Wallace the claim is that she was held by her anchor some 70 or 80 feet from the Plymouth; and that when the tide changed the Plymouth swung before the Wallace did, and so came in collision with the Wallace, doing the damage in question. Whichever be the true account, the Wallace is liable for the damages caused by the collision between her and the Plymouth, for the reason that she was anchored so near the Plymouth as to make collision certain when the tide changed, owing to the fact that the Plymouth would swing before the Wallace did upon the change of the tide. It is said in behalf of the Wallace that, after the Wallace brought up on her two anchors, those on the Wallace asked the Plymouth to move, in order to avoid collision between the two vessels when the tide turned; and the same testimony shows that it was known to those on the Wallace that the Plymouth would swing on the tide sooner than the Wallace did, and that if she did so swing there would surely be a collision. The fact that the Plymouth declined to move as requested does not render the Plymouth responsible for the damages that ensued. What caused the collision was the fault of the Wallace in remaining so near the Plymouth as to make collision inevitable on the change of tide when it was within her power to change her position. It is plain, therefore, that the Wallace is liable to the owner of the Plymouth for the damage caused by the collision.

The case contains also another claim by the owner of the Plymouth, who was also owner of the Luckenbach, for a service rendered by the Luckenbach to the Wallace after the collision. The salvage consisted in holding the Wallace up after the collision with the Plymouth, while her anchors were being raised, and then towing her 200 or 300 yards further up the breakwater. This service occupied five or six hours. For

this service the owner of the Luckenbach asked $1,000, but expressed himself willing to take $500, if paid without suit. The service rendered was a salvage service. The sea was rough. The Wallace was in some danger of going ashore, and considerable damage to both vessels was to be apprehended if they were not separated. The sea was rough, but not so bad but that a small boat came from the revenue cutter along-side of the Wallace, while in collision with the Plymouth. There were other tugs in the immediate vicinity who could have been called upon by the Wallace, and could have done for her all that the Luckenbach did. I think, under the circumstances, that the sum of $250 is sufficient compensation for the Luckenbach. Let a reference be had to ascertain the amount of the damages caused by the collision. For which amount, with $250 for salvage, the libelant may have a decree.