## THE CARL KONOW.

### GORLEY v. THE CARL KONOW.

(District Court, E. D. Pennsylvania.   December 17, 1894.)

#### No. 96.

COLLISION—DRAGGING ANCHORS IN STORM.
> During a storm, whose approach was plainly visible, the defendant vessel dragged her anchor, and came in collision with libelant's vessel, which was properly moored a safe distance away.  The defendant vessel did not put out a second anchor until after the storm had increased to a hurricane, and after such anchor was put out she did not continue to drift.  *Held,* that she was solely liable for the collision.

This was a libel by William Gorley, master of the steamship San Domingo, against the steamship Carl Konow, for a collision.

Convers & Kirlin, for libelant.

John Q. Lane, for respondent.

BUTLER, District Judge.   While the respondent was at anchor in the Delaware river off Kaighn's Point near Philadelphia, August 22, 1893, the libelant anchored a safe distance from her, 1,000 feet probably astern and considerably nearer the Pennsylvania shore. On the 24th the respondent, having a single anchor out, drifted downward some distance, and two days later returned to or near her former position.   In the night of the 28th an unusual storm arose during which she drifted upward, within reach of the libelant, where she swung about, doing considerable injury to the latter.

Is she responsible for the injury?   The case presents no question of law or seamanship.   Having collided with the libelant the respondent is presumably liable for the injury inflicted.   To the claim she answers that the collision was inevitable—the unavoidable consequence of the storm; that she took all proper measures to guard against it ineffectually.   This the libelant denies, charging failure to make proper use of her anchors, asserting that but one was down until after the drifting had occurred.   If this is true she is responsible.   The danger was apparent for hours previously; the approach of the storm was plainly visible, and should have been provided for.   If both anchors were not down before the vessel commenced drifting she was clearly in fault.   If they were down, her alleged case of inevitable accident is made out.   Thus the inquiry is reduced to this narrow point, and so the parties have presented it.   Was the second anchor down before the drifting occurred?   I am satisfied it was not.   As usual in such cases the testimony is conflicting, but its weight is with the libelant.   A discussion of the subject would be little more than a contrast of what is said on one side, with what is said on the other.   It is clear that this anchor was dropped some time after the storm arose; at what particular period is uncertain.   But it is certain that when dropped

the anchor held, and the vessel drifted none subsequently. On the respondent's brief, at page 7, this is conceded: "All admit she did not drift afterwards." · It follows necessarily that she drifted before, (otherwise she could not have collided with the libelant,) and that therefore the anchor was not down in time. Had it been it would have held her where she originally lay, as it held her at the point to which she drifted. The respondent's master plainly admits that this anchor was not down before the drifting occurred. ·

"When the storm had increased to a hurricane, what did you do? I let the anchor go."

"Q. After you had both anchors out, how did the ship ride? Did she drift any?

"A. No.

"×Q. When you dropped your second anchor were the steamers in the same relative position as they are marked on the diagram referred to, (positions before storm).

"A. No, it could not be.

"×Q. Had the Carl Konow at that time gone astern of the San Domingo?

"A. No, sir.

"×Q. What change had taken place in their relative positions?

"A. Carl Konow was coming a little more astern, but not astern of the San Domingo? ·

"×Q. Where was her bow as compared with the bow of the San Domingo? How many points aft or forward after you had paid out the first time?

"A. The Carl Konow's bow was about amidships of the San Domingo."·

It is true he says in chief "when the wind commenced to blow" he let the anchor go. This is evidently not accurate. The wind commenced to blow hours before, when it is plain the anchor had not been put down. What he meant, doubtless, to say is that he let it go when the wind commenced to blow a hurricane, or very hard. It is probable from what appears that he then commenced preparation to put it down. But as is evident he did not get it down until the vessel had moved back. The libelant's witnesses testify positively to seeing the anchor put down after the drifting had occurred. ·

The respondent's theory that the vessels came together without either leaving its original anchorage—by swinging in opposite directions at the same time under the same wind—seems impossible, and is disproved by the evidence that the respondent did drift, and thus reached the libelant.

Question was suggested whether the libelant should not have put out more chain after the respondent drifted back, but I see nothing in the suggestion: the libelant appears to have been blameless. The libel must therefore be sustained.