## THE SEVERN.

(District Court, E. D. Virginia. January 21, 1902.)

1. ADMIRALTY—EVIDENCE IN SUIT FOR COLLISION—ADMISSIONS OF MASTER.
   Statements made by the master of a vessel, after a collision, as to the manner of its occurrence, are receivable as admissions against the owners in an action against them for the collision.

2. COLLISION—DEFENSES—INEVITABLE ACCIDENT.
   The defense of inevitable accident in a suit for collision will not avail a vessel unless she is shown to have been free from fault.

3. SAME—ANCHORED VESSELS—DRAGGING ANCHOR IN STORM.
   Evidence that the dragging of a vessel's anchor, which resulted in her collision with another anchored vessel, was due to a sudden and severe squall, does not make out a defense of inevitable accident, where it is further shown that she had out only one of her two anchors, that the squall lasted only about five minutes, and that only one other of a number of vessels at the anchorage grounds dragged anchor, but such evidence, taken together, tends to show that the collision was due to the fault of such vessel in failing to be properly anchored.

4. SAME—PRESUMPTION OF CARE.
   In case of collision between two anchored vessels, one of which dragged its anchor while the other did not, the latter is presumed to have been free from fault.

5. SAME—FAULT OF PILOT—IMPROPER PLACE OF ANCHORAGE.
   The fault of a licensed pilot in anchoring a foreign vessel without cargo in the place allotted to loaded vessels by the harbor regulations is not attributable to the vessel.

In Admiralty. Suit in rem to recover damages for collision.

This is a libel filed by Lewis Luckenbach, owner of the barge Frank Pendleton, against the steam bark Severn, and a cross-libel filed by the owners of the Severn against the Frank Pendleton, to recover damages arising from a collision which occurred on the night of the 16th of August, 1900, between 8:15 and 8:30 p. m., near the mouth of James river, about abreast of Newport News; said barge and bark being, respectively, at anchor in the anchorage grounds prescribed by the harbor master of Newport News for loaded vessels. The barge Frank Pendleton was an ocean-going barge of a burden of about 1,300 tons gross, and the steam bark Severn was a British steam bark of a burden of about 2,000 tons. While so lying at anchor, a collision occurred in a storm by reason of the bark dragging its anchor and colliding with the barge.

Bickford & Stuart, for the Pendleton.

George Whitelock, E. I. Koontz, and Hughes & Little, for the Severn.

WADDILL, District Judge (after stating the facts). The faults assigned by the Pendleton are that the Severn was wrongfully anch-

ored within the space allotted for loaded shipping, it being at the time light; that it had out only one anchor,—its port anchor,—when both should have been out, and that at least its starboard anchor should have been kept in position to be immediately released in case of emergency or storm arising; that the Severn's yards should have been trimmed fore and aft, instead of athwart-ship, as they were; and that the bark was not supplied with a sufficient crew. The defense of the Severn is that the collision was inevitable, arising from a sudden and violent hurricane, that could not reasonably have been foreseen, and that the velocity of the wind was such that it was impossible to have avoided what occurred, and that the Pendleton was negligently anchored in too close proximity to it.

Considerable evidence was taken by the parties, respectively, including that of the master and crew of the Pendleton, though only the first mate of the Severn was examined; the bark, with its entire officers and crew, on the next voyage after the collision, having been lost at sea, with the exception of the mate, who had left the ship by reason of sickness. One of the questions much discussed was whether or not certain statements made by the master of the Severn the day after the collision, as to how the same occurred, was admissible in evidence against the ship. Objection was made to the admissibility of this evidence upon the examination of witnesses orally before the court, and the same was received subject to exception. The same admissions, however, had been previously received during the taking of depositions without exception. The objection should have been then made and insisted upon; but, in any event, it seems quite clear that such admissions from the master of the ship are received against the owner in proceedings in admiralty. The Enterprise, 2 Curt. 320, Fed. Cas. No. 4,497; The Potomac, 8 Wall. 590, 594, 19 L. Ed. 511; Packet Co. v. Clough, 20 Wall. 528, 541, 22 L. Ed. 406.

The defense of inevitable accident, assuming that the evidence in this case established the respondent's contention in reference thereto, will not avail the Severn, unless it is shown itself to be free from fault, which it has utterly failed to do. Union S. S. Co. v. New York & V. S. S. Co., 24 How. 307, 313, 16 L. Ed. 699; The Morning Light, 2 Wall. 550, 556, 557, 17 L. Ed. 862; The Mabey, 14 Wall. 204, 215, 20 L. Ed. 881; The Clara Clarita, 23 Wall. 1, 12, 23 L. Ed. 146; The Colorado, 91 U. S. 692, 703, 23 L. Ed. 379. Moreover, the evidence fails to make out a case of inevitable accident; that is to say, that the storm was of such a character as that the collision could not have been avoided by the exercise of ordinary precaution and good seamanship on the part of those in charge of the Severn. The storm, it is true, was a violent one, but it only lasted at most five minutes, and at great height for only a minute. While it did appear to have been a thunder squall, rather than a cyclonic storm, still the threatening character of the weather was sufficiently manifest to have caused the Severn to have anticipated the coming trouble, at least to the extent that it could instantly have lowered its anchor, and have avoided the very trouble that ensued; and, although the storm was extremely violent for a short while, the fact that only the

Severn and one other vessel lying at anchor in the harbor actually dragged anchor clearly indicates that the collision was attributable rather to the failure to have the necessary anchorage than to inevitable accident as the result of the suddenness and violence of the storm. My conclusion upon the whole evidence is that the collision was the result of the failure on the part of the Severn to have out its starboard anchor, and this, I think, sufficiently appears from the Severn's own evidence, independent of the admissions of its master, viz., that of the mate, Drake, and the other witnesses examined by the barge. It is conceded that the starboard anchor was not out, and it is plain from the evidence of the mate that it was, if in proper position to be let out, at least not put out in time to avert a collision, and, indeed, until the same was well nigh inevitable. The witness Drake and each of the expert witnesses examined by the Severn admit on cross-examination that it was not good seamanship to have been at anchor, under the circumstances, with only the port anchor out, and the starboard anchor not in position to be immediately let out. Had the two anchors been out, no collision would have ensued. The barge Frank Pendleton, having been collided with while at anchor, is presumed to have been free from fault, although in collision with another vessel which dragged its anchor. The Mary Fraser (D. C.) 26 Fed. 872; The Anerly (D. C.) 58 Fed. 794; The Carl Konow (D. C.) 64 Fed. 815. No fault should be imputed to the Pendleton because of its proximity to the Severn, as the preponderance of evidence establishes that it was anchored at an entirely safe distance from the Severn.

It is unnecessary, from the view taken by the court, to determine whether any fault should be attributed to the Severn for having been anchored in the space allotted to loaded instead of light vessels. The bark was put where it was by a licensed pilot, who himself, it seems, did not know as to the particular harbor regulation, and it would seem that fault should not be attributed to it on that account. The E. A. Packer, 10 Ben. 521, Fed. Cas. No. 4,241; The City of Reading (D. C.) 103 Fed. 696.

It follows from what has been said that the collision occurred solely from the fault of the Severn, and a decree may be entered so declaring.