## THE JUNIATA.

### THE SOVEREIGN OF THE SEAS.

(District Court, E. D. Virginia. August 1, 1903.)

1. COLLISION—VESSELS AT ANCHOR—IMPROPER ANCHORAGE.

   A vessel anchoring when light in a part of the anchorage grounds allotted to loaded vessels, which fact, however, was unknown to her captain, who was new to the port, is not thereby precluded from recovering damages for a collision which occurred without other fault on her part, where the anchorage grounds were not crowded, and she was permitted to remain in the same place for 10 days without objection from any one.

2. SAME.

   The duty is imposed on a vessel last anchoring to give another, previously anchored, safe anchorage room; and, if a collision results from her failure to do so, she is liable for the damages caused.

3. SAME—SAFE BERTH.

   A safe berth for anchorage, which a later vessel is required to allow to one previously anchored, should be construed to mean one in which, taking into consideration all the exigencies likely to arise, either by reason of the character of the harbor, the condition of the weather, or the season of the year, there should be no danger of collision, and all doubts should be resolved with a view of securing safety, having in view the possible contingencies which might arise; and especially so where there was ample anchorage space.

4. SAME.

   A vessel anchoring without necessity in too close proximity to one previously anchored is not in position to require the latter to incur extraordinary risks during a storm in order to avoid a collision.

5. SAME—EVIDENCE CONSIDERED.

   Evidence considered, and *held* to establish that a collision between two vessels at anchor, one of which was light and the other loaded, was due solely to the fault of the latter in anchoring and remaining during a high wind in too close proximity to the other, which was previously anchored, when there was ample space within the anchorage grounds.

In Admiralty. Cross-libels for collision.

Whitehurst & Hughes, for the Juniata.
Bickford & Stewart, for the Sovereign of the Seas.

WADDILL, District Judge. These are cross-libels filed by the owners of the respective vessels—Messrs. Bartlett & Shepherd for the Juniata, and Lewis Luckenbach for the Sovereign of the Seas. The Juniata and the Sovereign of the Seas are each ocean-going barges, engaged in the coal trade, from the port of Newport News, Va., and on the night of the 17th of February, 1900, while anchored in the harbor of the said port, were in collision, and sustained the injuries for which they respectively sue. The Juniata is a barge of 1,244 tons burden, gross, 260 feet long, 34 feet beam, 16½ feet draft; the Sovereign of the Seas, of the burden of 1,300 tons, 200 feet long, 40 feet beam, 24 feet draft. On the night in question the Juniata, being light, was, and had been for some 10 days previously, anchored about opposite to pier No. 8 of the Chesapeake & Ohio Railway,

and some 700 or 800 feet out from the pier; and the Sovereign of the Seas, being loaded, was anchored, as she had been for three days, a short distance down the river, slightly further out in the stream, on the port quarter of the Juniata.

The case of the Juniata is that the Sovereign of the Seas anchored in too close proximity to her, and that upon the night in question a sudden and violent storm arose, the wind blowing from the northwest, and the course of the river being at that point northwest and southeast; and the Juniata being light, and the Sovereign of the Seas loaded, the Juniata became wind-rode, and the Sovereign of the Seas tide-rode; that is, the Juniata held against the tide by the wind, and the Sovereign of the Seas, by reason of its improper anchorage, and the fact that it was heavily laden, and more susceptible to the influence of the tide, and less to the wind, was swept around by the flood tide, with her head to the tide, and into the Juniata, the two vessels coming into collision starboard to starboard, whereby the damage sued for was sustained. On the other hand, the Sovereign of the Seas claims that she was properly anchored, and a safe distance from the Juniata; that the latter was improperly anchored within a space allotted by the harbor master of Newport News to loaded vessels, and, being light, did not have sufficient anchor to hold her against the violence of the wind then prevailing, and that she dragged her anchor and collided with the Sovereign of the Seas, causing the damage sued for.

A mass of evidence was taken in the cause, some before the court orally, and a great deal by way of depositions; and the case turns almost entirely upon a correct determination of the facts, though two questions of law were presented and argued at length on the trial— one as to the effect of the Juniata being anchored in the space allotted to loaded vessels; and the other, the duty of the Sovereign of the Seas, it being the last vessel to anchor, to see that proper anchorage space was given to the Juniata. The Juniata was confessedly anchored in the space allotted to loaded, instead of light, vessels, but it cannot be said that her place of anchorage was the proximate cause of the collision. It does not appear that the master knew the harbor limits. It was his first trip to the port, and his vessel had been allowed to remain at this anchorage ground for 10 days without disturbance or molestation on the part of any one; and the Sovereign of the Seas selected its anchorage ground with full knowledge of this fact, and that the Juniata was light. The latter vessel should not, in the absence of other fault on her part, be held disentitled to recover by reason of her anchorage in this location, particularly in view of the fact that the harbor was not crowded, and the lax manner in which the harbor rules and regulations seem to have been enforced and observed at that port. The James Gray, 21 How. 184, 188, 16 L. Ed. 106; The Clara, 23 Wall. 1, 14, 23 L. Ed. 146; The Severn (D. C.) 113 Fed. 578, 580; The Northern Queen (D. C.) 117 Fed. 906, 914, 915.

In passing, it may be said that it would be better to abolish the harbor rules and regulations, if they are not to be reasonably observed by those who prescribe them. To give literal effect to them, remain-

ing as they do in a dormant state, inevitably tends to catch the unwary, and give advantage to those more favorably circumstanced as to the information of their existence.

As to the berth room allowed, it may be conceded that, the Sovereign of the Seas having last anchored, the duty was imposed upon her of giving to the Juniata safe anchorage room, and that, if the damage resulted from failure so to do, the loss should fall on the vessel failing in its duty in that regard. The Beaver, 2 Ben. 118, Fed. Cas. No. 1,199; The Queen of the East, 4 Ben. 103, Fed. Cas. No. 11,506; The Lincoln, 1 Low. 46, Fed. Cas. No. 8,353; The Wallace (D. C.) 41 Fed. 894; Humphreys v. Chas. Warner Co. (D. C.) 45 Fed. 270, 272; Spencer on Collisions, 254; The Vivid, 42 L. J. 57, 28 L. T. 375, 1 Asp. M. C. 601; The Northampton, 1 Spinks, 152; The Volcano, 2 W. Rob. 337.

A "safe berth" should not be construed to mean one from which probable accident might not arise, but ample space; that is, taking into consideration all the exigencies likely to arise, either by reason of the character of the harbor, the conditions of the weather, and the season of the year, no danger of collision would arise, and close calculations should not be made, and risks run in giving room; doubts should be solved with a view of securing safety, having in view the possible contingencies that might arise, making it necessary for each vessel to take greater space than was apparently required at the moment; and particularly is this true where ample anchorage space existed, as it did on this occasion.

The evidence taken in the cause is very voluminous, and covers many questions and theories on different phases of the case, all of which will not be necessary to be passed upon in detail, further than to say that the same have been fully considered, and the conclusion reached by the court is that the facts as contended for by the Juniata are established by a great preponderance of the evidence, and, indeed, with far greater certainty and clearness than is usual in collision cases. It is quite apparent from the evidence that, whatever may have been the precise distance at which the Sovereign of the Seas anchored from the Juniata—whether from 200 to 300 feet, as claimed by the latter vessel, or 900 feet, as claimed by the former—at least the anchorage as made by the Sovereign of the Seas was an unsafe one, and that her master failed to take into account the danger of collision likely to arise from the possible contingency of a storm coming against the tide, which reasonably might have been expected at that point and at that season of the year, and in which a northwest wind would hold a light vessel in one direction, and a flood tide sweep a loaded vessel in the opposite direction, and that this was the real cause of the collision here, and the same did not occur by reason of the dragging of the anchor of the Juniata, as claimed. The facts and circumstances all tend to support the theory of the Juniata, rather than that of the Sovereign of the Seas, and in this the entire crew of the Juniata concur, whereas only the master of the Sovereign of the Seas, and his wife, who was on shipboard, were examined to support the claim of the latter vessel. Moreover, in the most material questions affecting the collision the evi-

dence of witnesses from the two other vessels lying in the immediate vicinity, who saw the vessels in collision, as well as the master of a tugboat which was at the pier at the time the collision occurred, and whose business required him constantly to pass in and out between the two vessels during the daytime, and who also observed the vessels in collision, fully corroborates the witnesses for the Juniata as to when, how, and under what circumstances the collision occurred.

The contention of the Sovereign of the Seas that the accident should have been avoided by the Juniata shortening her anchor, and that it was her duty to do so, instead of the former tripping its anchor and dropping down river, is not well taken, under the circumstances of this case, as it is quite clear from the evidence that it would have been very imprudent for the Juniata to have attempted this expedient at the time, and that it would have been practicable for the Sovereign of the Seas to have removed from her dangerous location; and it may be said that the evidence utterly fails to establish the claim of the master of the Sovereign of the Seas that there was any vessel below the Sovereign of the Seas, and on her port quarter, that made it impracticable for him to have moved his vessel. And besides the Sovereign of the Seas was not in a position—having herself made an improper anchorage—to call upon the Juniata to incur extraordinary risks in order for the Sovereign of the Seas to avoid the collision. The Vivid, supra; Marsden's Dig. Ship. Cas. 694.

It follows from what has been said that the collision occurred solely by the negligence of the Sovereign of the Seas, and a decree will be entered so determining.