## THE BERTHA.

### THE ATHANASIOS.

(District Court, E. D. Virginia. June 29, 1917.)

1. COLLISION ☞69—ANCHORED VESSELS—PRECAUTIONS IN ANCHORING.

It is the duty of a vessel last coming to anchor to allow ample berth space to other vessels already anchored in the vicinity.

2. COLLISION ☞71(1)—VESSELS AT ANCHOR—INSECURE ANCHORAGE.

A collision between two vessels anchored in Hampton Roads during a sudden windstorm *held* due solely to the fault of one, which was light and with an unusually high freeboard, in failing to anchor securely in the first place, or to take proper precautions when the storm came on to prevent dragging the single anchor she had out.

In Admiralty. Suit for collision between the Norwegian steamship Bertha and the Greek steamship Athanasios. Decree in favor of the Bertha.

Hughes & Vandeventer, of Norfolk, Va., for the Bertha.

Hughes, Little & Seawell, of Norfolk, Va., for the Athanasios.

WADDILL, District Judge. On the evening of the 21st of December, 1916, the Norwegian steamship Bertha anchored in Hampton Roads, Va., 600 to 900 feet away from the Greek steamship Athanasios, which had come in and anchored during the afternoon of the day before in the same vicinity. Both vessels were anchored near the quarantine station, off Old Point, and each was brought in and located by a Virginia pilot, and at the time of the anchorage of the Bertha there were several other ships also anchored in the vicinity. On the morning of the 22d of December, about 8 o'clock, a hurricane suddenly came up from the southwest, and the Bertha and Athanasios came into collision, inflicting injury to the Bertha's stem, and damaging the superstructure of the Athanasios. The Bertha is 245 feet long, 38 feet beam, about 20 feet deep, and of the net register of 1,067 tons; and the Athanasios 355 feet long, 51 feet beam, 26 feet depth, and of the net register of 2,691 tons. Both vessels were light; the Athanasios had out her starboard anchor on 45 fathoms of cable, and about an

---

hour before the collision the master of the Athanasios, going ashore about 7 a. m., caused 30 fathoms of chain additional to be paid out.

The Bertha insists that the Athanasios was in fault in failing to anchor securely and properly, taking into account her size and unusual freeboard; for not having up steam and using the same; for not having a proper anchor watch, who would have observed the approaching storm and cast out an additional anchor; and for not maneuvering, upon her anchor dragging, in such manner as to avoid colliding with the Bertha while drifting. The Athanasios charges the Bertha with coming into a crowded harbor at night, in a fog, and anchoring in too close proximity to vessels already anchored; for failure, upon discovering this fact, to move to a safe place, or, upon the coming of the storm, to pay out more of her cable, with a view of allowing other vessels greater room to swing.

This case turns almost entirely upon a question of fact, as to whether the accident occurred by reason of the Athanasios' anchor dragging, causing her to collide with the Bertha, or because the latter failed to give the Athanasios sufficient room upon her coming to anchor, and this can be solved only by a full consideration of all the testimony.

[1, 2] That it was the duty of the Bertha, the vessel last coming to anchor, to allow ample berth space to other vessels to anchor, may be conceded (The Juniata [The Sovereign of the Seas] 124 Fed. 861 [D. C.]); and the court's conclusion, after taking into consideration all of the facts and circumstances of the case, including the anchorage grounds, and the presence of other vessels, is that the Bertha's anchorage was proper, and that sufficient space was allowed to the Athanasios, had she either made a proper anchorage originally, or, upon the coming of the storm, exercised proper care and caution to have provided against her anchors dragging, by reason of the force of the sudden wind, causing her to drift into the Bertha. Nor can the Athanasios escape responsibility, under the circumstances here (The Severn [D. C.] 113 Fed. 578), because of the suddenness and violence of the storm. It is true it came on suddenly from the southwest, and blew with great violence from 40 to possibly 80 miles an hour for a few minutes; but there was no reason why those in charge of the Athanasios, in the exercise of proper care on their part, should not have seen and anticipated this condition, in time to avoid accident therefrom, as did other vessels then lying at anchor. This is especially true of a ship of the size of the Athanasios, with its unusually high freeboard. The season of the year and the location of the anchorage grounds, should have admonished them that sudden storms might arise; and the Athanasios cannot escape liability to others, injured by her negligence in this respect, or ask them to share in her losses.

The court's conclusion upon the whole case, is that the collision was solely the fault of the Athanasios, and that she should bear the loss arising therefrom. A decree will be entered in accordance with these views, when presented.