## THE BALTIMORE.

(District Court, D. Massachusetts. March 15, 1920.)

No. 1536.

1. **Collision** ⟸69—**Vessel must anchor so as not to endanger others already anchored.**

   A vessel anchoring in a harbor must so place and secure herself as not to endanger the vessels there before her, and the fact that she fails to do so under conditions not extraordinary nor beyond reasonable foresight raises a presumption of fault.

2. **Collision** ⟸71(3)—**Barge at fault for improperly anchoring.**

   Where a collision resulted from an anchored barge dragging her anchor during a gale and striking an anchored steamship, the barge *held* at fault for permitting an unanchored barge to be attached to her when the wind was already blowing half a gale.

3. **Collision** ⟸71(3)—**Vessel properly anchored is favored by courts.**

   Courts are slow to find that a vessel properly at anchor was negligent for not shifting position to get out of the way of another vessel, which has anchored foul or is dragging without excuse.

4. **Collision** ⟸71(3)—**Properly anchored steamer held not at fault for collision with barge dragging anchor.**

   A steamer, which was properly anchored, *held* not at fault for failure to shift her position to avoid a barge, which was dragging her anchor, where the barge's fault was of rather a gross character.

Libel by Tjebbe Swart against the barge Baltimore for damages resulting from a collision. Decree for libelant.

G. Philip Wardner, of Boston, Mass., for libelant.
Geo. L. Dillaway, of Boston, Mass., for claimant.

⟸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORTON, District Judge. This is a libel to recover damages received by the steamship Eemdijk while at anchor in President Roads, from a collision with the barge Baltimore, which dragged her anchors, so that the vessels came into contact.

The steamer had been lying at anchor for several days in the same place. The barge was brought into port by the tug Sanford on Sunday evening, March 4, 1917, in a heavy wind and snow, and was anchored half or three-quarters of a mile to the north and windward of the steamer. Another barge was in the tow; she put down no anchors, but rode to a hawser on the stern of the Baltimore. The tug left them and proceeded to the city. Both barges were light and high out of water.

During the night the wind increased, and the Baltimore put down both anchors and let out all her chain; but, burdened by the other barge, she was unable to hold her place and dragged to leeward. When morning came she was abreast the steamer, 500 or 600 feet distant from her. The wind continued to increase, and during the forenoon reached full gale strength, blowing at times more than 50 miles an hour. About 9:30 a. m. the tug came and took away the tail barge. No request for assistance was made by the Baltimore at this time, and the tug made no effort to change her position. During the day (Monday) the barge apparently dragged somewhat more towards the steamer, and by evening seems to have been within 150 or 200 feet of her. The captain of the steamer called to the barge to slack out cable, and received the reply that she was unable to do so. At this time the tide was on the flood, flowing west. The vessels were tailing across it, about south. The tide had more effect on the steamer, which was loaded, than on the barge, which was light. The latter undoubtedly held a position pretty nearly to leeward of her anchors, regardless of the tide, while the steamer swung with it.

The tide turned ebb about 9:30 p. m., and the steamer swung east. This brought the vessels close together, and by 10 o'clock or thereabout the danger that they might collide was imminent. About midnight they did so. One of the steamer's men stood by with a fender, and the first contact did not injure either vessel. The steamer again called upon the barge to slack out cable, or to get up her anchor and drift out of danger, and was told that the barge was unable to do either. The steamer thereupon got steam on her own windlass and pulled ahead on her chains. As she was doing so, the barge struck her heavily under the poop and inflicted substantial injuries. The steamer then swung to the east of the barge, over her anchor chains, and rode in safety with the barge on her port quarter during the rest of the night. In the morning a number of the men from the steamer went aboard the barge at the request of her captain, and assisted her crew, which consisted of only two men, to get up her anchors. She thereupon drifted off and reanchored at a safe distance. But before this maneuver was completed the barge had again collided lightly with the steamer and inflicted further injuries. On disputed details of what occurred, the testimony for the steamer appears to me more reliable than that for the barge.

[1, 2] It is the duty of a vessel, anchoring in a harbor among other vessels, so to place and secure herself as not to endanger those there before her. The fact that she fails to do so, under conditions not extraordinary nor beyond reasonable foresight, raises a presumption of fault on her part. The Maggie Armstrong, The Blue Bell, 14 L. T. Rep. 340; The Volcano, 2 W. Rob. 337. During the period here in question, the weather conditions, while severe, were not out of the ordinary for that time of year. There was nothing in them to excuse dragging. The barge, if properly anchored, would have held her position. The Baltimore acquiesced in the arrangement whereby the other barge was moored to her stern. In moderate weather it might have been unobjectionable; but at the time when the anchorage was made the wind was blowing half a gale, it was snowing, and a heavy sea was getting up. It was apparent that the two barges, so anchored, were likely to drag, and, being in a frequented anchorage, to endanger other vessels, if they did so. Upon all the evidence I find that the Baltimore was improperly anchored, and that this fault caused the collision.

[3] As to the alleged fault on the part of the steamer in not getting out of the way: The case appears to be the usual one, in which a vessel improperly anchored has dragged and fouled another vessel. Such accidents seldom occur suddenly. Generally the privileged vessel could, by the exercise of sufficient alertness, foresee the possibility of accident in time to avoid collision. As the decisions show, however, courts are slow to find that a vessel properly at anchor was negligent for not shifting her position to get out of the way of another vessel, which has anchored foul or is dragging without excuse. The Vivid, 1 Asp. M. C. 601; The Wallace (D. C.) 41 Fed. 895; The Juniata (D. C.) 124 Fed. 861; The Mary Fraser (D. C.) 26 Fed. 872. The only case looking the other way which has come to my attention, The Sapphire, 11 Wall. 164, 20 L. Ed. 127, is explained in The Clara, 102 U. S. 200, 203, 26 L. Ed. 145, and in several subsequent decisions, as resting on the failure of the anchored vessel to keep a proper watch on deck under conditions which clearly demanded one—"a fault of great weight." 102 U. S. 203, 26 L. Ed. 145.

[4] In this case the situation developed with considerable rapidity towards the last. The emergency arose entirely because of the barge's fault, which was of rather gross character. It is questionable whether the barge, which had not crew enough to handle her own anchors, was sufficiently manned. If she had been able to raise her anchors, she could have cleared the steamer without injury. Under all the circumstances, it seems to me that whatever doubt may exist as to the steamer's conduct should be resolved in her favor.

Decree that the Baltimore was solely at fault, and referring the case to an assessor to state the damages.